We have the assistance of an esteemed colleague, Judge John Padova of the Eastern District of Pennsylvania. And we, Judge Fischer and I, greatly appreciate his giving us his intellect, his wisdom, his friendship, and his assistance. Thank you. We'll call the next case, U.S. v. Rosado. Good morning. May it please the Court, I'd like to request two minutes for rebuttal. Thank you. You are Ms. Enid Harris? I'm Enid Harris, in her 20s. That's fine. And I'm here on behalf of Euclides Rosado. Let you orient yourself there. This is a case, a sentencing appeal. Mr. Rosado was sentenced to 140 months, a mid-guideline range sentence, when there were multiple arguments made to the Court to reduce his sentence. And the Court did not consider them under either 3553, not expressly, not even tacitly. Did you represent him at the sentencing? No, I did not. A lady from New York. I had some trouble figuring out what the precise nature of the application was that he was trying to make to the Court. Candidly, I agree with Mr. Behe that it appears that it was an argument for a variance, because there was not a formal motion made. But it was very confusing to me. That's why I argued it in my brief, that it appeared that it could be a motion for damages. Did he say he was seeking a departure at any time? The word departure was used not by Attorney Pelosi, but I believe it was used by Mr. Behe's representative. That was one of the confusing things in the sentencing group. So if you agree with that, where are we with this case? So what are you arguing for? Well, I said it appears to me that Mr. Behe's right, but as I just said, it's confusing. So it could be it was a motion for downward departure. It was not a formal motion, and it was discussed in the nature of a motion for downward departure by, and I'm probably going to mispronounce his name, Mr. Behe's representative, because Mr. Behe was not at the sentencing either. There was another attorney from his office who was there. Regardless of whether it was made or not as a motion for downward departure, it was pretty clear that the court understood that she had a right to depart if she chose to and opted not to. I don't know if it is clear, Your Honor, based on what the court said when she sentenced Mr. Rosado. She focused entirely on the need for punishment and incarceration. Well, but he had a specific application that he was making. He was saying that his conviction in New York was overstated. That's correct, Your Honor. It was a disorderly conduct offense, and he specifically said to the judge, the category or the guideline range that you have arrived at overstates the offense that I was convicted in in New York. And she asked the assistant U.S. attorney to directly address the criminal history question. The court did not specifically ask him to, but he did. He did. There was an extensive discussion by both the assistant U.S. attorney. It was there. Pardon me? He discussed it? Yes, he did. Yeah. In fact, he came closer to calling it a motion for downward departure than anybody else did there, as I recall. That's correct. You know, the problem I had is I couldn't figure out what the judge's response was to the request. And I know the prosecutor, I guess. Mr. Turs. Mr. Turs did reference it, but I didn't get the judge's response to the request to consider the overstatement of the New York conviction. The judge did not respond other than to say, I wish you'd been here earlier in your career, Mr. Rosado. That was the only statement she made that even remotely approached that. Is that a problem? I think it is. I know that the cases say that the judge doesn't have to use, as United States versus Lydia Cooper said, magic words. What's the problem? The problem is the judge should specifically address the argument that was made about the overrepresentation of his criminal history category. Whether she addresses it in the context of a variance or a motion for downward departure, she should address it and consider it in making her sentence. But it was clear from the record that the issue was before her. It was clear from the record that she understood his criminal history. And it was very clear from the record that she appreciated the consequences of his act. And from our jurisprudence, isn't that enough? Didn't the record show that she took into consideration all of the issues that were properly put before? I don't believe it does, Your Honor. In fact, the record is not only confusing on whether this was a motion for downward departure. It's confusing on a number of things. You admit that. But the consequences of that confusion isn't necessarily that Judge Kane was in error as to how she sentenced. I think it might be if the confusion amounts to her not considering the factors that she's required by U.S. Supreme Court and Third Circuit precedent to consider. That's step two or step three in Gunter? Oh, I have to look at this one. Step one, she has to calculate the guideline range. Right. Step two is, I believe, where she has to... Rule on departure motions. Rule on departure motions. And then step three is 3553. Yeah. Isn't your real argument it's step three? That's probably the brunt of the argument, but that's not the real argument. I mean, she had everything in front of her. She knew exactly what the crime was. She knew exactly what his criminal record was. She knew what the guideline range was. And she picked 140 months. By the way, I'm even less sure that she knew what she was talking about this morning than I was before I came here. Mr. Behe, my request brought me the transcript of the sentencing proceeding of Mr. Rayna, which immediately preceded this, and also Mr. Cooper's transcript. And Judge Fuentes was on the Cooper panel. And the Rayna transcript in particular, I remember this was immediately before Mr. Rosado's, reads like something Alice in Wonderland. Reading it, I'm not even sure how they calculated the sentence he got, except that it's pretty obvious no matter how you do the math that she gave him less than a guideline sentence. The standard of review is abuse of discretion. So perhaps you can tell us how Judge Cain abused her discretion in sentencing Mr. Rosado. One is in not making very clear on the record what she was doing with the argument about the over-representation of his criminal history. Two, in not making a ruling or at least discussing the disparity between his sentence and the co-defendants, especially Mr. Rayna. Besides the disparity, she didn't make any rulings or any discussion at all on Mr. Rayna's background, not just his criminal history. Again, and I'm kind of hitting, maybe kicking a dead horse here, the cases require that when she's presented with these arguments, especially when she's sentencing more than one person in a case, that she consider them and make specific findings or discuss them on the record. In a case in point, the same judge, and this is in the Commonwealth's brief, United States v. Wise, Judge Cain in that case, and the transcript is quoted almost verbatim in the Wise case, very specifically discusses every argument that was made to her for departing or varying. In Mr. Wise's case, I believe it was completely and unequivocally a variance that was being requested. She makes specific statements as to each and every one of them and says why they are not influencing her decision. She did not do that in this case. Well, it's not a small point that you're making, is it? I mean, if the judge had considered the overstatement of the New York conviction and had determined that it was overstated, and by the way, I understand there's now an amendment to the sentencing guidelines, which eliminates this as a point. Yes, I think as of November of last year, yes. If he were sentenced today, this would not count, but it did count then. And if the judge had said, well, let's not count it, that makes a huge difference in the sentence, doesn't it? Yes, it does. It would reduce it from 121 to 151 months, from that range to 108 to 135. So it's a difference literally of a couple of years in the sentence. All right, so go back to what he did say. Rosado did ask the judge to consider the overstatement. He said, Your Honor, there's really essentially one area that he wanted to address, and that is regarding the criminal history category. Right. He didn't call it a request for a variance. He didn't call it a request for a departure. He just said, I want you to consider it. Yes. I think I asked you before, is that a problem, or should the judge say, well, I will consider it, and the sentence is the same, or what specifically is your motion? What's the judge's responsibility here? At the very least, to determine what it is that's being asked, as the government's brief indicates in the attached copy of the sentencing letter, literally the sentencing letter that was submitted before Rosado's sentencing, as well as the arguments at sentencing were in the terminology, used the phraseology and the words out of the section of the guidelines 141.1 or whatever it is. Did the judge explicitly ask the judge to consider the criminal history? Yes, she did. I have more than a minute left. I'll save some more for rebuttal. Okay. Very good. Thank you. Mr. Behe. Thank you. May it please the Court, my name is William Behe. First, I think it's important to appreciate how Judge Kain addressed the issue that was being raised concerning the factual basis for the New York conviction for disorderly conduct. It was first raised in a sentencing letter that was submitted to the Probation Department, but addressed to Judge Kain, which was captioned in terms of a 3553A consideration, in other words, a variance based upon their belief that the facts in that particular case, or the conviction, the title of disorderly conduct, is greater sounding than what the facts might have been for that. At the time of the sentencing proceeding, although Ms. Pelosi talked in terms of, I wanted to address the criminal history category, they conceded that the point was correctly added. At one point asked the Court for mercy, again described the facts of the case, and essentially was making an argument that when the Court considered its section 3553A factors, that this would be a reason to vary from the guideline range that the Court correctly determined was applicable in this case, 121 to 151 months. Do you think the point was correctly added? In terms of the Probation Department concluding that it gets a point? In terms of the disorderly conduct violation for which there was a conditional discharge. Yes, because at the time the guidelines say a year or greater. The guidelines have been, unless I misunderstand your question. No, you didn't. It was a conditional discharge case, was it not? That's what it says. Similar to what Pennsylvania's ARD program is. Except here, I think it said he pled guilty. And after his guilty plea, he'd be conditionally discharged. And I'm not sure that in the ARD that there is any adjudication of guilt. You do agree that the Sentencing Commission has changed the rule so that the conditional discharge that Rosado was subject to would not be added as a point today? I'll accept that. Well, it was done. It was done because the Sentencing Commission thought it awfully harsh to include a conditional discharge as a point for a criminal offense. Well, and that's certainly an excellent reason for changing it. But that doesn't mean that Judge Kain didn't understand that she had the discretion to consider that as well when imposing a sentence. I think that's true. And the problem that I had was figuring out whether she actually did consider it and whether she said she considered it. You were not. I was not the counsel. I was Mr. Terz. It was my case, but he filled in at that sentencing proceeding point. But here's the record that I'm looking at when Rosado was asking the court to take into account the conditional discharge. And so Rosado says, Judge, I think legally it is appropriate. But when you weigh it and what the consequences of it is, something that he received basically in New York as no sentence, it's called the conditional discharge, et cetera, et cetera. The government then responds, if that's correct, Your Honor, I think clearly that's something the court can take into consideration. Absolutely. So the government says, yes, you can take it into consideration. But the next thing that the judge says is as follows. Okay, let's talk about the motion for downward departure. But that has nothing to do with the criminal conviction. It has to do with the government's motion for 5K1. I understand that. And I think if you look at the three-step process, that answer from Judge Kain shows that she did not treat this as a motion that she had to dispose of, a motion for departure from the guidelines because it overstated the seriousness of his criminal history. She considered it as perhaps an advance variance argument that was being made, because that seemed to be the only thing that Ms. Pelosi was focusing on other than the defendant's background. Then the court moved to the motions. After determining what the guidelines would be and considering the government's motion, which would be the second step, they arrived that she had granted the motion, reduced his offense level by four to the range of 121 to 151 months, then went to the consideration of the argument that had previously been presented about his criminal history and his background, and that would be step three, consideration of 3553A factors. I don't think anybody who would have been in that courtroom or reads this record could think that Judge Kain did not consider everything that was thoroughly presented to her concerning Mr. Rosado and his background, the circumstances of that conviction. I think she did a very good and thorough job. The only question I had in looking at the record is whether the judge actually considered the request by Rosado to consider the overstatement of his record. I could find nothing there that suggested, even in the 3553 analysis. I agree with you that she did not specifically say, I have considered your specific argument concerning the facts underlying the arrest. I would say that had it been a motion for departure under the guidelines, there may have been a contest because if the court looks at the pre-sentence investigation report, the facts that describe that conviction are dramatically different than the facts that were described by Ms. Pelosi at the time. So there may have been some dispute over what the factual basis was. But I think when Judge Kain says, as she does, after listening to all the arguments, I think he makes a lot of compelling points about his personal background and the history that will cause the court to view them sympathetically. I'm very sympathetic to the circumstances that placed him in the situation he found himself in, but he's a significant drug trafficker. That's a very good statement, and I think it follows his argument that he's had a troubled life. Including an arrest for disorderly conduct that may not have, may overstate the seriousness of it. But in terms of considering it, as Judge Kain said, look, we're at a point where I think you're lucky to be at, based on the government's motion for departure, because it was admittedly a rather anemic motion. It didn't provide a judge with substantial facts, but she nonetheless granted it. Imposed a within-guideline range sentence after consideration of all this, and I know there's no presumption of reasonableness, but a sentence within a guideline range is more likely reasonable than not. And I think, as Your Honor said, when you authored the Wise opinion, it would give great deference to the district court. They're in the best position to weigh these. And I don't think that the judge ignored a fact that was raised for her to consider. She just generally said, I've considered everything in this case, which would include the argument that was presented in the sentencing letter and to the judge at oral argument. I must say that this was a 2006 sentencing. Counsel was working their way through how to describe what exactly they're asking for, and counsel for the United States. And Ms. Pelosi may not have precisely fashioned what they wanted for the court to consider, but I don't think there's any doubt that the judge considered everything that Mr. Rosado presented to her. Thank you. Okay. You did say, just one last question. You did say if Rosado were to prevail and go back for sentencing, that you would withdraw your 5K1 motion, is that it? I would. You would? And he testified a month later at the sentencing proceeding for Mr. Cooper, a co-defendant, and essentially said that the DEA agent had made up information that he was not involved in the substantial distribution of crack cocaine, essentially violated the terms of his plea agreement that he cooperate. The motion for 5K1 didn't ask the court to give him a break for everything he had done up to sentencing, but referenced the fact that he had given information about other targets and ongoing investigations. As of his testimony in the Cooper sentencing, that ended. I guess it's important for him to take into account because he can come out of this worse off by appeal. Well, that's why I was hoping that maybe Judge Cain... Then if he left things alone. I hope that Judge Cain... I've had several instances where the court believes it is not entitled to reconsider the government's request in an instance where they've sentenced, granted a motion... Well, that's what I was leading to. Can you really do that? I mean, the defendant has already been sentenced. Now you're going to go back and say, well, let's do it over again and I'm going to take this back. Is there any authority for the government to do that, to withdraw a 5K1 motion? I would think that if the original sentence was obtained through the defendant's use of fraud or misleading of the court or the government to secure the benefit for himself, that that would give the court the option of doing that. It goes back for resentencing and subsequent events show that the defendant has either lied about all his co-defendants, about his own involvement to secure the benefit. I don't see... When you do your 5K1 motion, you tell the court that you've received substantial assistance from this defendant that's worthy of consideration. When that hasn't occurred, you just defer sentencing until you receive the cooperation. Isn't that the way it normally works? It works that way now, Your Honor, after my experience in this case and one other case. We try to continue cases as long as we can, appreciating the district court's need to go forward with the cases that might be around for a substantial period of time because of multiple defendants in a case. Sometimes we sentence and say you don't get a motion, you'll get a Rule 35 motion. In this case, maybe it's a lesson hard learned. Mr. B., let me direct you to another area. The need to avoid an unwarranted sentencing disparity here. Mr. Rosado's counsel focused that in comparison to the co-defendant, Mr. Rainier. But taken together with the inclusion of the disorderly conduct conviction in the criminal history, don't the two of those factors create an unwarranted sentencing disparity among people like Mr. Rosado across the spectrum beyond just these co-defendants? I don't believe so because the court viewed this man as a significant trafficker. And the range that she arrived at for purposes of sentencing, she obviously felt was... It wasn't the evidence against Rainier. I mean, they both drove up in different cars. They were both involved with the cocaine distribution at relatively the same levels. The only thing that really distinguished the two of them was this disorderly conduct conviction. No. Judge Cain granted either a three- or a four-level reduction for Mr. Rainier for role in the offense. She viewed him as being just a minimal participant in the undertaking. And the pre-sentence report describes Mr. Rosado's conduct as going on for several years, not just episodic. There would have been another departure that she could have granted if it hadn't been for the fact that he had a Schedule II criminal history. That's correct. He could have gotten a safety valve provision. So it seems just disorderly conduct conviction tripped him up all the way along the line. And I just wonder if that didn't create an unwarranted sentencing disparity that should have been recognized. Perhaps, but it was never raised. There was no request of the court to consider whether the sentence of Mr. Rosado is somehow – there's a disparity between the sentence that had just been imposed on Mr. Rainier and what was imposed on Mr. Rosado. Just as there was no request to consider the disparity between crack and powder cocaine, there was no request to consider the sentence for Mr. Rosado in relation to what was imposed for Mr. Rainier. It was not before the court, and the court considered what she – what I'm getting from the record – what she believed to be the thrust of the argument made by the counsel in the United States, telling Judge Kain, we think you can consider that if you think it's appropriate. Okay.  Thank you very much. Thank you very much. Ms. Harris, your button. I'd like to respond to what Your Honor brought up during Mr. Behe's argument about the 5K1 departure. If there is a remand for resentencing, I don't believe Mr. Behe can take it back. I couldn't find any law one way or the other to be candid with you, but I did read his departure motion, which is in the appendix, and it says nothing about future cooperation. And as he himself mentioned, if the bounty of the government was contingent upon future cooperation at Mr. Cooper's sentencing or otherwise, then Mr. Behe didn't have to make the 5K1 motion. He could have filed a Rule 35 motion afterwards and rewarded Mr. Rosado for that future performance. The 5K1 motion that was made talks about the proffers that Mr. Rosado made before his sentencing, and it was based on that. He cannot take it back as far as I'm concerned. If there is a remand for resentencing, the 5K1 motion is still on the table because he cannot take it back. And Judge Fischer, I agree completely with your observations on disparity. I ran into the same research pause that you ran into. I hadn't found any authority for that. That didn't mean you can't do it, I suppose. Well, then I'll be back up here again. I have not found any support for it. Anything else, Ms. Harris? No, thank you, Your Honor. Thank you, Ms. Harris. Thank you both for your very helpful arguments. We'll take the case under advisement. Thank you.